1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
_____
                                        )
9   PATRICK A.T. JONES,                 )          No. C07-711RSL
                                        )
10                     Plaintiff,       )          ORDER DENYING PLAINTIFF'S
          v.                            )          MOTION FOR MANDATORY
11                                      )          PRELIMINARY INJUNCTION
    WASHINGTON INTERSCHOLASTIC          )
12  ACTIVITIES ASSOCIATION,             )
                                        )
13                     Defendant.       )
_____)

14
                         **I.  INTRODUCTION**
15

16        This matter comes before the Court on plaintiff's "Motion for Mandatory Preliminary

17  Injunction" (Dkt. #2).  Earlier this year, defendant Washington Interscholastic Activities

18  Association (the "WIAA") denied plaintiff's request for a waiver of the WIAA's "out-of-season

19  rule," which would have allowed plaintiff, an assistant Bellevue High School football coach, to

20  coach his seventh grade son's football team for more than twelve weeks this fall.  In his motion,

21  plaintiff now seeks injunctive relief to allow him to coach his son's team for more than the out-

22  of-season rule's twelve week limit.  For the reasons set forth below, the Court denies plaintiff's

23  motion for injunctive relief.[1]

24

25
_____
26        [1]  Neither party requested oral argument under Local Civil Rule 7(b)(4).  Accordingly, the Court
    decides this matter on the memoranda, declarations, and exhibits submitted by the parties.

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION

## II.  DISCUSSION

### A.  Background

Plaintiff is the assistant head coach of the Bellevue High School varsity football program. See Dkt. #3 (Jones Decl.) at ¶2.  In addition to coaching high school football, plaintiff coaches football on a volunteer basis for the Greater Eastside Junior Football Association ("GEJFA"). Id. at ¶3.  This fall, plaintiff plans to coach his seventh grade son's "middle level" GEJFA team. Id. at ¶4.

The WIAA, is a private, not-for-profit corporation authorized under RCW 28A.600.200 to control, supervise and regulate interscholastic activities in the State of Washington.  See Dkt. #13 at ¶1.2.  Bellevue High School, where plaintiff is a football coach, is a member school of the WIAA.  See Dkt. #8 (Hoffman Decl.) at ¶7.  Each year the WIAA publishes a handbook with the rules and regulations governing student participation in all sports and extracurricular activities creating a "level playing field" for the member schools so students compete under the same standards.  See Dkt. #7 (Colbrese Decl.) at ¶9.  The WIAA rules include the "out-of-season rule," which is the subject of this litigation.  Id. at ¶2.   The out-of-season rule governs the amount of time that the WIAA member schools' coaches can work with their athletes during the school year.  Id.  The WIAA defines "out-of-season" as "that time during which paid or volunteer coaches can not [sic] coach present or future squad members."  See Dkt. #2, Ex. A at ¶17.6.0.  The out-of-season rule limits the amount of time that high school coaches may work with middle school athletes when a specific sport is not offered in the middle school, providing that "[i]n the absence of a sport being offered by the middle level school, twelve consecutive (12) weeks within the high school season dates shall apply."  Id. at ¶17.2.1; Dkt. #7 at ¶2D. Because Bellevue School District has no middle level football program, the out-of-season rule allows high school football coaches to coach middle school students for a maximum of twelve weeks during the high school football season.  See Dkt. #7 at ¶3.  The football season of the middle level GEJFA team that the plaintiff coaches has a thirteen week and four day season,

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -2-

which exceeds the out-of-season rule's twelve week limit. See Dkt. #3 at ¶6.

Last year, plaintiff was concerned that by coaching his son's GEJFA team for thirteen weeks and four days, he would violate the out-of-season rule and would thereby be in breach of his football coaching contract with Bellevue High School subjecting him to termination of his high school coaching position. See Dkt. #1 (Complaint) at ¶3.6 in Case No. C06-796JLR. To resolve this conflict, on April 30, 2006, plaintiff sought a waiver of the out-of-season rule from the WIAA. See Dkt. #3, Ex. 2. On May 1, 2006, the WIAA denied plaintiff's request for a waiver. Id. On May 19, 2006, plaintiff filed a lawsuit in King County Superior Court seeking a court order declaring the WIAA's out-of-season rule unconstitutional, granting him a waiver, or directing the WIAA to modify the rule. See id.; Dkt. #1 (Complaint) in Case No. C06-796JLR. Defendant removed the case to federal court and on July 19, 2006, before any decision on the merits, the parties' stipulated to dismissal. See Dkt. #25 in Case No. C06-796JLR. In reaching this voluntary resolution, and in order to comply with the twelve week limitation set by the out-of-season rule, plaintiff agreed not to coach the first week of the GEJFA season and the WIAA granted plaintiff a one-week waiver for the end of the thirteen week and four day GEJFA season. See Dkt. #7 at ¶8. In addition, the WIAA agreed to submit an amendment to its Representative Assembly seeking a change of the out-of-season rule that would allow plaintiff to coach the GEJFA team its entire season. Id. In April of 2007, an amendment was proposed to the Representative Assembly, but it was defeated 35-8. Id. at ¶16.

Given the amendment's defeat, this year plaintiff again attempted to obtain a waiver of the out-of-season rule from the WIAA. See Dkt. #3 at ¶12. On May 7, 2007, the WIAA denied plaintiff's request for a waiver, and later that same day, plaintiff initiated this lawsuit by filing his "Complaint for Violation of Fundamental Right Under 14th Amendment; [and] Wrongful Denial of Waiver Request." See Dkt. #3, Ex. 1; Dkt. #1 (Complaint).

Plaintiff now moves for a preliminary injunction: (1) enjoining the WIAA from enforcing the out-of-season rule if plaintiff coaches the GEJFA team; or (2) requesting that the WIAA

grant plaintiff an out-of-season rule waiver; or (3) requesting that the WIAA modify its rule and grant exemptions to coaches who coach at both a member high school and a community program.  <u>See</u> Motion at 2.

**B.  Analysis**

    **1.  Injunction standard and requested relief**

      "A preliminary injunction is appropriate where plaintiffs demonstrate either:  (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of the hardships tips sharply in their favor.  The district court must also consider whether the public interest favors issuance of the injunction."  <u>Sw. Voter Registration Educ. Project v. Shelley</u>, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curium) (internal quotation marks and citations omitted).  "These two options represent extremes on a single continuum:  'the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and the balance of the hardships tip in their favor.'"  <u>Lands Council v. Martin</u>, 479 F.3d 636, 639 (9th Cir. 2007) (quoting <u>Sw. Voter Registration Educ. Project</u>, 344 F.3d at 918).

      "A prohibitory injunction preserves the status quo."  <u>Stanley v. Univ. of S. Cal.</u>, 13 F.3d 1313, 1320 (9th Cir. 1994).  In contrast, "[a] mandatory injunction goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored.  When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party."  <u>Id.</u> (internal quotation marks and citations omitted).

      In his motion and reply, plaintiff equivocates on the type of injunctive relief he is pursuing.  On one hand, plaintiff expressly seeks a mandatory preliminary injunction.  His motion is styled as a "Motion for Mandatory Preliminary Injunction," and his request for mandatory injunctive relief is confirmed by the motion itself where he states:  "Plaintiff Jones moves the court for a mandatory preliminary injunction."  <u>See</u> Motion at 1, 2.  Further confirming the request for mandatory injunctive relief, plaintiff states that the "WIAA should

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION     -4-

grant Jones a waiver," or in the alternative that the WIAA "shall modify its [out-of-season] rule." See Motion at 2 (emphasis added). This form of relief requires affirmative, not prohibitory, conduct by the WIAA and is not a preservation of the status quo since plaintiff currently does not have a waiver nor has the rule been modified. Accordingly, by seeking affirmative conduct by the WIAA, plaintiff is requesting mandatory preliminary relief subject to heightened scrutiny by the Court. See Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) ("'[M]andatory preliminary relief' is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.") (citing Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980).

On the other hand, in his reply, plaintiff claims that he is just trying to preserve the status quo: "Jones' status quo is that he is an Assistant Head Coach at Bellevue High School, he is head coach of his son's GEJFA junior football team, he has never been in violation of any WIAA rule or regulation, and Bellevue School High School [sic] is not subject to sanctions due to any actions taken by Jones. That is the status quo in this case; and that is what needs to be preserved." See Reply at 1. Consistent with this theory, plaintiff seeks relief in the form of an injunction: "enjoining the WIAA from enforcing the Out-of-Season Rule if Jones also coaches at the middle school level." See Motion at 2 (emphasis added). This type of prohibitory injunctive relief is not subject to the same heightened scrutiny that applies to requests for affirmative conduct.

The Court finds, however, that characterizing plaintiff's relief as a request for the WIAA to take affirmative action (a mandatory injunction) as opposed to prohibiting the WIAA from acting (a prohibitory injunction) is a distinction without difference in this case because, as discussed below, plaintiff fails to meet the less restrictive standard for a prohibitory injunction.

### a.    Likelihood of success on the merits

The first step in analyzing plaintiff's likelihood of success on the merits is to determine the standard of review applicable to plaintiff's claims. Plaintiff has two claims against the

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -5-

WIAA:  (1) a claim for violation of "equal protection of a fundamental right" under the Fourteenth Amendment of the United States Constitution; and (2) a claim for "wrongful denial of a waiver."  See Dkt. #1 at 5-6.  The decision or "action" taken by defendant is its denial of plaintiff's request for an out-of-season rule waiver.  See Dkt. #1 at ¶3.8.  Plaintiff argues that the Court should review the "WIAA's decision" de novo.  See Motion at 9.  In contrast, defendant argues that the Court should review the WIAA's decision to deny plaintiff's request for a waiver under an arbitrary and capricious standard.  See Response at 12.  Washington courts review the WIAA's decisions implicating constitutional questions de novo.  See Fusato v. WIAA, 93 Wn. App. 762, 767 (1999) (reviewing de novo the WIAA's decision denying plaintiff's eligibility under the WIAA's Rule 18.22.1).  Accordingly, the Court reviews de novo plaintiff's claim that the WIAA's denial of his waiver is a constitutional violation.

Plaintiff's second claim for "wrongful denial of a waiver" based on a violation of the "spirit of the [out-of-season] rule," however, is reviewable under an arbitrary and capricious standard because the WIAA's decision was essentially administrative.  See Dkt. #1 at ¶4.10 ("The spirit of the rule is specifically being controverted by the WIAA's refusal to allow the waiver.").  In Francisco v. Bd. of Dir. of Bellevue Pub. Sch., 85 Wn.2d 575 (1975) the Washington Supreme Court outlined a four-step test to determine whether an administrative action is quasi-judicial warranting de novo review by a court:  "(1) the court could have been charged in the first instance with the responsibility of making the decision; (2) the function of the agency is one that courts have historically performed; (3) the agency performs functions of inquiry, investigation, declaration and enforcement of liabilities as they stand on present or past facts under existing laws; and (4) the agency's action is one comparable to the ordinary business of the courts."  Yaw v. Walla Walla Sch. Dist. No. 140, 106 Wn.2d 408, 414 (1986) (citing Francisco, 85 Wn.2d at 579-81).

Applying the Francisco factors to this case, the WIAA's denial of a waiver was an administrative action and the arbitrary and capricious standard of review applies.  First, the

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -6-

Court could not have been charged in the first instance with the responsibility of making the waiver decision, because in this case under RCW 28A.600.200, the WIAA is vested with control, supervision and regulation of interschool athletic activities.  Second, courts traditionally have not been involved in making decisions involving athletic associations.  While Washington courts have not addressed this specific question, authority from other jurisdictions suggests that interscholastic agencies' application of their own rules is typically reviewed for abuse of discretion rather than de novo.  See, e.g., Clay v. Arizona Interscholastic Ass'n, Inc., 161 Ariz. 474, 476, 779 P.2d 349 (Ariz. 1989) (reviewing rule under arbitrary and capricious standard); Indiana High Sch. Athletic Ass'n, Inc. v. Durham, 748 N.E. 2d 404, 413 (Ind. App. 2001) (reviewing rule and its application under arbitrary and capricious standard); Gerard v. Section III of New York State Public High Sch. Athletic Ass'n, 210 A.D.2d 938, 939-40, 620 N.Y.S.2d 670 (N.Y. App. Div. 1994) (reviewing application of rule under arbitrary and capricious standard); Shelton v. NCAA, 539 F.2d 1197, 1198 (9th Cir. 1976) ("It is not judicial business to tell a voluntary athletic association how best to formulate or enforce its rules.").  Third, the WIAA did not inquire, investigate, declare, and enforce liabilities in this case.  See Yaw, 106 Wn.2d at 414. Finally, the WIAA Executive Director's decision to deny plaintiff a waiver is not an action comparable to the ordinary business of the court.  See id.; Dkt. #3, Ex. 1.

Accordingly, while the Court reviews plaintiff's constitutional claim de novo, the claim for wrongful denial of a waiver will be reviewed under the arbitrary and capricious standard. Given the different standards of review to be applied here, plaintiff's claims are discussed separately below.

### i.    Equal protection claim

Even under a de novo standard of review, the Court finds that there is little to no likelihood of plaintiff prevailing on his claim for "equal protection of a fundamental right."  See

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -7-

Dkt. #1 at 5-6.[2]  Plaintiff contends that the WIAA's out-of-season rule violates the Fourteenth Amendment.  See Dkt. #1 (Complaint).  Plaintiff alleges in his complaint and motion that the out-of-season violates his fundamental right to coach high school varsity football and his son's football team, and his fundamental right to "work for a living," and the out-of-season rule has "a disparate impact on those high school coaches who also coach at the middle school level."  Id. at ¶4.4; Motion at 12.

In considering a challenge under the Equal Protection Clause, the Court must first determine what level of scrutiny to apply "depending upon the interest affected or the classification involved."  Dunn v. Blumstein, 405 U.S. 330, 335 (1972).  The Supreme Court has "repeatedly held that a classification neither involving fundamental rights nor proceeding along suspect lines cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose."  Central State Univ. v. Amer. Ass'n of Univ. Professors, 526 U.S. 124, 128 (1999) (quotation marks, citation, and alteration omitted); Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000) ("To withstand Fourteenth Amendment scrutiny, a statute is required to bear only a rational relationship to a legitimate state interest, unless it makes a suspect classification or implicates a fundamental right.") (citing City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (per curium) (equal protection)).  In assessing plaintiff's likelihood of success on the merits, the Court applies a rational basis standard of review, because as discussed below, plaintiff has not shown that:  (1) the WIAA deprived plaintiff of a fundamental right, or (2) the alleged classification proceeds "along suspect lines."

First, plaintiff has not shown that he has a fundamental right to coach high school football

---

[2]  As a threshold issue the Court notes "[a]s a general matter the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights."  NCAA v. Tarkanian, 488 U.S. 179, 191 (1988) (quotation marks and citation omitted).  In this case, defendant does not contest that it is a state actor subject to constitutional limitations.  See Dkt. #14 (Answer) at ¶4.2 ("WIAA admits that it is subject to the Fourteenth Amendment of the United States Constitution").

or his son's football team.[3]  See Motion at 13; Dkt. #1 (Complaint) at ¶4.3 (asserting that "the right to continue a lengthy career as a football coach is a fundamental right.").  Courts have rejected claims that coaching or participation in interscholastic sports is a fundamental right. See Schneeweis v. Jacobs, 771 F. Supp. 733, 738 (E.D. Va. 1991) ("The law does not recognize a fundamental right to coach basketball."); Fusato, 93 Wn. App. at 768 ("Washington courts have recognized there is no fundamental right to engage in interscholastic sports.  It follows that for [plaintiff] to prevail, the WIAA residence and transfer rules must discriminate against a suspect class to warrant strict scrutiny review.") (citing Darrin v. Gould, 85 Wn. 3d 859, 873 (1975)); Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 344 n.2 (3d Cir. 2004) ("There is no constitutionally protected right to play sports.  Thus the fact that the requirements regulate Megan's ability to play basketball is of no legal consequence.").

The Court also rejects plaintiff's characterization of the right at issue in this case as the fundamental right to work for a living.  See Motion at 12; Dkt. #1 (Complaint) at ¶4.3.  As the Ninth Circuit has stated, "[t]he [Supreme] Court has never held that the 'right' to pursue a profession is a fundamental right, such that any state-sponsored barriers to entry would be subject to strict scrutiny."  Dittman v. California, 191 F.3d 1020, 1031 n.6 (9th Cir. 1999) (emphasis in original).  The Washington Supreme Court is in accord with this pronouncement. See Amunrud v. Board of Appeals, 158 Wn.2d 208, 220 (2006) ("[N]either this court nor the United States Supreme Court has characterized the right to pursue a particular profession as a fundamental right.") (citing Mederios v. Vincent, 431 F.3d 25, 29 n.3 (1st Cir. 2005) (explaining that it is "well settled" that there is no fundamental right to pursue a livelihood or occupation and "that legislation or regulation impinging upon such a right therefore is subject only to 'rational basis' review, rather than 'strict scrutiny'")).

---

[3]  The Court commends plaintiff's desire to foster his father-son relationship through the GEJFA program.  This desire, however, does not necessarily translate into a constitutional question warranting heightened judicial scrutiny.

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION         -9-

The Court does not find plaintiff's citation to the following language from Truax v. Raich, 239 U.S. 33, 41 (1915), dispositive:  "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure."  See Motion at 12.  Truax addressed an Arizona law requiring companies to employ 80% United States citizens, and the Truax passage cited by plaintiff involved the Supreme Court's review of a suspect classification:

> [The State's police power] does not go so far as to make it possible for the State to deny to lawful inhabitants, because of their race or nationality, the ordinary means of earning a livelihood.  It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure.  If this could be refused solely upon the ground of race or nationality, the prohibition of the denial to any person of the equal protection of the laws would be a barren form of words.

Truax, 239 U.S. at 41 (emphasis added, internal citations and quotations omitted).  In a more recent Supreme Court decision, Conn v. Gabbert, 526 U.S. 286, 291-92 (1999), the Court noted that "[i]n a line of earlier cases [including Truax], this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."  Id. (citing Truax) (emphasis added).  The Court went onto state that "[t]hese cases [including Truax] all deal with a complete prohibition on the right to engage in a calling, and not the sort of brief interruption which occurred here."  Id.  As the Conn v. Gabbert opinion explains, a brief interruption in one's calling does not raise Fourteenth Amendment concerns, and, the right to choose one's field of private employment is subject to reasonable regulation.  In Truax, the government regulation was unreasonable because it was based on a suspect class.[4]  Truax, 239 U.S. at 41.  Here, there is no suspect class at issue,

---

[4] It is also worth noting that Truax, decided nearly a century ago, is a Lochner v. New York, 198 U.S. 45 (1905), era decision.  "Because the Lochner era has long since passed, [plaintiff's argument based on Truax] must fail."  Nat'l Assoc. for Advancement of Psychoanalysis, 228 F.3d at 1051 (citing Armendariz v. Penman, 75 F.3d 1311, 1318 (9th Cir. 1996) (stating that Lochner "symbolizes an era in

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -10-

and, even if the out-of-season rule is enforced by the WIAA, plaintiff only has to refrain from coaching his son's team for one week and four days, which is a "brief interruption" that does not offend the Fourteenth Amendment reasonableness considerations.

Finally, in his motion and reply, plaintiff relies on <u>Duranceau v. City of Tacoma</u>, 27 Wn. App. 777, 780 (1980), to support his argument that the right to specific employment free from unreasonable interference is a fundamental right. <u>Id.</u> ("The right to hold specific private employment free from unreasonable government interference is a fundamental right which "comes within the 'liberty' and 'property' concepts of the Fifth Amendment.") (quoting <u>Green v. McElroy</u>, 360 U.S. 474, 492 (1959)).  Since the Washington Court of Appeals' opinion in <u>Duranceau</u>, however, the Washington Supreme Court in <u>Amunrud</u> explained that Washington's highest court has never characterized the right to pursue a profession as a fundamental right. <u>Amunrud</u>, 158 Wn.2d at 220.  Furthermore, other courts have explained that what is meant by "unreasonable" in this context "is a wholly arbitrary and irrelevant means of classification or a classification which offends enumerated constitutional rights." <u>Macias v. Finch</u>, 324 F. Supp. 1252, 1259 (N.D. Cal. 1970).  In this case, even if the right at issue is characterized as plaintiff's right to employment as an assistant varsity football coach, the WIAA's decision to deny plaintiff a waiver of the out-of-season rule is not derived from a suspect classification, like race or alienage, or the exercise of a specifically protected right, like speech or religion.  Accordingly, defendant's denial of plaintiff's request for a waiver is not unreasonable.

Plaintiff has also not shown that the out-of-season rule or its application is based on a suspect classification.  Even if the rule has "a disparate impact on those high school coaches who also coach at the middle school level," plaintiff has not demonstrated that this is a suspect classification under the Fourteenth Amendment. <u>Id.</u> at ¶4.4; <u>see, e.g.</u>, <u>Assoc. Students, Inc. of Cal. St. Univ. Sacramento v. NCAA</u>, 493 F.2d 1251, 1256 (9th Cir. 1974) ("In our opinion,

which the Court, invalidating economic legislation, engaged in a level of judicial activism which was unprecedented in its time and unmatched since.").

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION          -11-

NCAA's official interpretation of its 1.600 Rule does not create a classification which violates the Equal Protection Clause of the Constitution."). In any event, plaintiff grounds the equal protection claim in his complaint on the depravation of a fundamental right, not a suspect class. See Dkt. #1 (Complaint) ¶4.0 ("As the first cause of action against Defendant WIAA, Plaintiff Jones alleges as follows:  Violation of the 14th Amendment Equal Protection – Fundamental Right") (emphasis added).[5]

Following the Court's determination that rational basis review applies to plaintiff's constitutional claim, the Court also concludes that the WIAA's action denying plaintiff a waiver of the out-of-season satisfies rational basis scrutiny.  As defendant explains in its response, there is a rational relationship between the WIAA's denial of plaintiff's request for a waiver and a legitimate governmental purpose:  to create a level playing field in Washington state interscholastic athletics.  See Response at 12.  Enforcement of the out-of-season rule:  (1) allows students to participate in a variety of activities without pressure from a coach to dedicate all of their time in one particular sport or activity; (2) discourages sport specialization at an early age; (3) maintains a competitive balance by restricting all teams to a designated sports season; (4) protects students from early athletic burnout; and (5) protects students from overuse injuries commonly found in youth sports.  Id.  Based on this rational relationship to legitimate state interests, the Court concludes that it is unlikely that plaintiff will succeed on the merits with his equal protection claim.

### ii.  Wrongful denial of a waiver claim

As noted above, the WIAA's denial of a waiver should be affirmed by the Court unless the WIAA's action was arbitrary or capricious.  The Washington Supreme Court "has defined arbitrary or capricious agency action as action that is willful and unreasoning and taken without regard to the attending facts or circumstances. . . .  Where there is room for two opinions, and the

---

[5] Nor has plaintiff claimed that he was part of a "class of one."  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

1   agency acted honestly and upon due consideration, th[e] court should not find that an action was

2   arbitrary and capricious, even though th[e] court may have reached the opposite conclusion."

3   Port of Seattle v. Pollution Control Hearings Bd., 151 Wn.2d 568, 589 (2004) (internal

4   quotations and citations omitted).  For the reasons stated in Section II.B.1(a)(i) above, the Court

5   concludes that the WIAA's decision to deny plaintiff a waiver of the out-of-season rule is

6   rationally related to legitimate state interests.  For this reason, the Court also concludes that the

7   WIAA's action in denying the waiver was not arbitrary, capricious, or contrary to law.[6]

8              **b.**    **Possibility of irreparable injury**

9         The second consideration at this end of the preliminary injunction continuum involves the

10   consideration of "irreparable injury" to plaintiff, which includes injuries that cannot be fairly

11   compensated by monetary damages or other forms of relief available at law.  See eBay Inc. v.

12   MercExchange, L.L.C., ___ U.S. ___, 126 S. Ct. 1837, 1839 (2006) ("[R]emedies available at

13   law, such as monetary damages, are inadequate to compensate for that [irreparable] injury.").

14   Throughout his motion, plaintiff repeatedly contends that if the WIAA enforces the out-of-

15   season rule, the injury he will suffer will be the termination of his high school coaching job.  See

16   Reply at 12.  The Court finds, however, that this is an overstatement of the magnitude of

17

---

18         [6] Plaintiff's argument that the Court should review the number of days of coaching rather than

19   the number of weeks is not persuasive.  See Motion at 22 ("Given the fact that the number of coaching days [in the GEJFA program] is less than the rule allows for the middle school program, equitable relief

20   would be fundamentally sound in light of both parties' positions."); Reply at 7.  The measure of the WIAA's rule is weeks, not days or hours.  The WIAA needs some measure of time to enforce the out-of-

21   season rule, and its choice of a rule based on weeks is not arbitrary or capricious and is rationally related

22   to its interest in creating a level playing field between interscholastic programs.  Furthermore, it is only fair that plaintiff follow the week-based rule instead of arguing that the number of coaching days should

23   govern.  See, e.g., Tennessee Secondary Sch. Athletic Ass'n v. Brentwood Acad., ___ U.S. ___, 167 L.

24   Ed. 2d 166, at *17 (2007) ("[T]he First Amendment does not excuse Brentwood from abiding by the same anti-recruiting rule that governs the conduct of its sister schools.  To hold otherwise would

25   undermine the principle, succinctly articulated by the dissenting judge at the Court of Appeals, that

26   '[h]igh school football is a game.  Games have rules.'  It is only fair that Brentwood follow them.") (internal citation omitted).

  ORDER DENYING PLAINTIFF'S MOTION FOR
  MANDATORY PRELIMINARY INJUNCTION     -13-

plaintiff's potential injury in this case.  Enforcement of the out-of-season rule means that plaintiff cannot coach his son's GEJFA team for more than twelve weeks.  In his declaration, plaintiff asserts that:  "My team will be practicing in the 13th week whether or not my team is in the playoffs.  My team will be either practicing for a playoff game or a consolation game.  There is no circumstance in which my team would not be exceeding the Out-of-Season Rule."  See Dkt. #3 at ¶7.  Last year in support of his waiver however, plaintiff represented to the WIAA's Executive Director that a GEJFA season lasting longer than twelve weeks was only a possibility:

> My problem is that its [the GEJFA team's] season runs for <u>potentially 13.5</u> (thirteen and one half) <u>weeks</u> – <u>11.5 for everybody in the league</u>, 12.5 for the semifinalists and 13.5 for the finalists.  Naturally, my team <u>may/may not be a semi-finalist or a finalist.</u>  <u>There is of course no way of knowing that in advance.</u> Therefore, I am requesting a waiver of the 12 week limitation for high school coaches working with middle school athletes at the same time – a waiver which would allow me, <u>if applicable,</u> to finish coaching my junior team (and my son) for the final week and a half of their season <u>should that situation present itself.</u>

<u>See</u> Dkt. #3 (Jones Decl.) at Ex. 2 (plaintiff's April 30, 2006 e-mail to the WIAA's Executive Director Mike Colbrese).  Based on this representation, any harm in the WIAA's refusal to grant plaintiff a waiver is speculative at this point.

Furthermore, plaintiff contends that he is faced with a choice of either coaching his son's team or coaching the varsity Bellevue High School team.  This too, is a bit of exaggeration. Even if this year's GEJFA season extends to thirteen weeks and four days as plaintiff represents, plaintiff can coach the GEJFA team for twelve weeks and have an assistant or substitute coach the week and four days plaintiff cannot coach under the rule.  In its reply, the WIAA offers this as a solution that will avoid a conflict with the out-of-season rule.  <u>See</u> Reply at 19 ("Plaintiff was able to limit his contact with his community team last year with the aid of an assistant coach.  There is no reason why he cannot again have an assistant work with his team for the additional one and one-half weeks.").  Plaintiff stated last year that "[c]hildren grow up way too fast and missing two of my son's 11 (or 12 or 13) weeks of football–versus no longer coaching high school football does not seem a fair set of choices given this set of circumstances;

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -14-

especially given my many, many years of service." <u>See</u> Dkt. #3 at Ex. 2.   The Court recognizes

that it is not that easy for plaintiff to simply step aside for a week and four days, because he is

probably needed most at the end of the season (if his team is in the semi-finals or finals) or at

the start of the season (where they need the most coaching).   However, the Court does not find

the potential of missing one week and four days of GEJFA football coaching rises to the level of

irreparable injury warranting a preliminary injunction in this case given the Court's findings

above explaining the unlikelihood that plaintiff will prevail on the merits of his claims.   <u>See</u> Dkt.

#3 at Ex. 2.   Furthermore, last year plaintiff "agreed not to coach any player on the GEJFA team

for the first week." <u>See</u> Dkt. #3, Ex. 2 at ¶8.   Plaintiff has not shown that his one week away

from GEJFA coaching last year caused irreparable injury.   Accordingly, the Court concludes

that when considered against the unlikelihood that plaintiff will prevail on the merits, plaintiff's

injuries, however potentially irreparable, are not sufficient to justify the remedies he seeks in the

motion for injunctive relief.

<b>c.    Serious questions, balance of the hardships, and the public interest</b>

As indicated in the analysis above, the Court concludes that it is unlikely that plaintiff

will prevail on the merits of his equal protection claim and his wrongful denial of a waiver

claim.   Given this uncertainty, plaintiff bears an even heavier burden of convincing the Court

that "the public interest and balance of hardships tip in [his] favor." <u>Sw. Voter Registration Ed.</u>

<u>Project</u>, 344 F.3d at 918.   The Court takes claims alleging violation of the Fourteenth

Amendment seriously.   On a motion for preliminary injunction, while "[s]erious questions need

not promise a certainty of success . . . [they] must involve a fair chance of success on the

merits." <u>Republic of Philippines v. Marcos</u>, 862 F.2d 1355, 1362 (9th Cir. 1988) (citation and

internal quotation omitted).   In this case, the Court does not believe that plaintiff has a fair

chance to succeed on the merits of either of his claims.

The harm that will befall plaintiff if he is not granted a waiver of the out-of-season rule is

that he will have to refrain from coaching his son's GEJFA team for one week and four days.

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -15-

As discussed in Section II.B.1(b) above, however, during this one week and four day period, his son's team can continue to be coached by a substitute or assistant coach. Turning to the hardships to the WIAA if injunctive relief is granted, the Court finds that the balance tips in the WIAA's favor. If the WIAA is instructed by the Court either to grant plaintiff a waiver of the out-of-season rule or to change the out-of-season rule, the WIAA's ability to enforce and promulgate their rules will be diminished. Additionally, inequities will result because other coaches within the WIAA's jurisdiction will not have the same benefit of exceeding the out-of-season rule's limit.[7] The WIAA represents that the out-of-season rule protects young athletes physically and emotionally and it also creates a competitive balance among the 800 schools that comprise the WIAA. The potential harm of eroding this balance outweighs the loss plaintiff will experience if he cannot coach his son's team for a week and four days.

Finally, the Court must weigh whether the public interest favors the injunction. Sw. Voter Registration Ed. Project, 344 F.3d at 917. In making this determination, the Court must determine whether the public interest favors the moving or nonmoving party. See Sammartano v. First Judicial Dist. Court In & For the County of Carson City, 303 F.3d 959, 974 (9th Cir. 2002). The Court finds that the out-of-season rule implicates the public interest, and despite the fact that plaintiff and his GEJFA football team might benefit from an out-of-season waiver, as stated above, the public's greater interest in the preservation of the WIAA's authority to pursue a competitive balance among its member schools and its athletes favors the WIAA and a denial of plaintiff's requested injunctive relief.

## III.  CONCLUSION

For all of the foregoing reasons, plaintiff's "Motion for Mandatory Preliminary

---

[7] See, e.g., Dkt. #12 ("The proposed rule change would have been unfair to all school districts that have middle school sports and are limited to the 12 week season."). The Court also notes that the Athletic Director for Bellevue High School does not support plaintiff's claims against the WIAA. See Dkt. #8 (Hoffman Decl.) at ¶2.

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -16-

Injunction" (Dkt. #2) is DENIED.

DATED this 26th day of July, 2007.

Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR
MANDATORY PRELIMINARY INJUNCTION        -17-